```
           IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION

Equal Employment Opportunity   )
Commission,                    )
                               )
            Plaintiff,         )  Case No. 1:10-CV-667
                               )
     vs.                       )
                               )
CSX Transportation, Inc.,      )
                               )
                               )
            Defendant.         )
```

O R D E R

This matter is before the Court on Defendant CSX Transportation, Inc.'s motion for summary judgment (Doc. No. 18). For the reasons that follow, Defendant's motion for summary judgment is not well-taken and is **DENIED.**

I. Background

The Equal Employment Employment Opportunity Commission ("EEOC") filed suit against Defendant CSX Transportation, Inc. ("CSX") on behalf of Edward Gay alleging that it discriminated against Gay on the basis of race when it refused to grant Gay a leniency reinstatement following his termination for a safety violation.  The basic facts of this case are not in dispute.

Edward Gay was, and is, a locomotive engineer employed by CSX.  Gay is African-American.  In June 2008, Gay committed a major safety violation when he misjudged the stopping distance of his train and allowed it to enter a crossing that was

experiencing an activation failure[1] without allowing the conductor to dismount and flag traffic. This is known as a "Rule 100-J" violation. In July 2008, Gay was terminated for committing this violation. Doc. No. 25-19, at 2.

Although Gay was terminated, CSX has a policy which allows for "leniency reinstatements" at the sole discretion of the division manager. There are no set criteria for granting a leniency reinstatement. Swafford Aff. (Doc. No. 18-2) ¶ 17; Doc. No. 26-1, at 31 (Swafford Dep). The gist of a leniency reinstatement, however, is that the employee admits the violation and waives appeal of the discipline and in exchange is returned to work. Cruea Aff. (Doc. No. 25-2) ¶ 3. The division manager at this time was J.J. O'Brien.

Unfortunately, O'Brien retired in 2009 and passed away shortly thereafter. The record indicates, however, that Gay's union representative, Charles Cruea, immediately requested O'Brien to grant Gay a leniency reinstatement, and followed up on his initial request numerous times, and that O'Brien continually deferred making a decision on the request. O'Brien once told Cruea that he wanted to base his reinstatement decision on

---

[1] An "activation failure" is "the failure of an active highway-rail grade crossing warning system to indicate the approach of a train at least 20 seconds prior to the train's arrival at the crossing, or to indicate the presence of a train occupying the crossing, unless the crossing is provided with an alternative means of active warning to highway users of approaching trains." 49 C.F.R. § 234.5.

recommendations from Jermaine Swafford, the assistant division manager at the time and who is also African-American, Eric Osborn, a trainmaster, and a road foreman, Dennis Henson.  Cruea Aff. ¶ 14.

About nine months after Gay's termination, Cruea was finally able to arrange a meeting between himself and Gay on one hand, and Swafford, Osborn, and Henson on the other.  Gay and Cruea's recollection of the meeting is that Gay admitted the Rule 100-J violation, expressed remorse, and stated that he would do what he had to do in order to be reinstated.  Gay also became tearful during the meeting, although the degree to which he broke down is disputed.  Swafford's perception of this meeting is that Gay did not accept full responsibility for the violation, tried to shift blame to the conductor, and a lost control of his emotions.  Swafford Aff. (Doc. No. 18-2) ¶ 19.

After the meeting, Swafford recommended that O'Brien not give Gay a leniency recommendation.  Swafford provided three reasons for his recommendation: 1) Gay's employment record, which the Court will explore further below; 2) Gay's failure to fully accept responsibility for his actions; and 3) Gay's failure to control his emotions.  Swafford Aff. ¶ 20.  About a week after this meeting, O'Brien informed Cruea that he was denying Gay's request for leniency reinstatement and that Gay would have to proceed through the appeals process.  O'Brien did not tell Cruea

the reason or reasons for his decision. Cruea Aff. ¶ 19. In April 2010, the Public Law Board ("PLB")[2] ordered that Gay be reinstated, albeit without back pay. Doc. No. 25-12, at 1. The PLB found that CSX had adequate justification for assessing discipline, but that the sanction of termination was too harsh in view of Gay's "tenure and relatively good record." Id.

Under CSX's Individual Development and Personal Accountability Plan, rules violations are classified as "minor offenses," "serious offenses," and "major offenses." See Doc. No. 25-10, at 8-10. Major offenses are the most serious offenses and can be sanctioned with dismissal from service on the first occurrence.

In addition to the June 2008 Rule 100-J violation, which was a major offense, Gay's disciplinary record is as follows. In March 2008, Gay had a minor offense for failing to announce on the radio every 15 minutes that his train was stopped on the track. In February 2008, Gay had a minor offense for failing to report a train separation in a timely manner. In January 2008, Gay had a minor violation for failing to use positive identification on the radio. In April 2007, Gay was assessed a major offense for using alcohol while he was on call (known as a "Rule G" violation). Gay was not dismissed for the

---

[2] Public Law Boards are private arbitration panels established for dispute resolution pursuant to the Railway Labor Act. Henegar v. Banta, 27 F.3d 223, 225 (6th Cir. 1994).

4

Rule G violation; rather he was required to submit to random drug and alcohol testing for a period of time. These incidents all occurred while Gay was an engineer. In July 2005, while working as a conductor, Gay had a serious offense for failing to "protect a shove" resulting in a derailment and damage to the car and track. Gay also had two other serious offenses as a conductor in 2004 for failing to protect shoves resulting in cars rolling off the track. See Doc. No. 25-14, at 1-3.

      The EEOC claims that another Caucasian engineer, Gregory Leach, with a disciplinary record similar to Gay's, was granted leniency reinstatement after committing similar offenses. In January 2010, Leach had a minor offense for failing to complete a work inspection report. In March 2008, Leach had a major offense for telling an offensive joke to another employee. Leach was given a 60-day "overhead" suspension, which essentially is a suspended sentence that could be imposed in the event of another infraction. In February 2008, Leach had a minor offense for working with a finger ring. In May 2007, Leach had a major offense for a Rule 100-J violation. Leach was dismissed from service, but was given an leniency reinstatement by O'Brien. Doc. No. 26-1, at 91. In November 2006, Leach had a minor violation for failing to document a brake test. In August 2006, Leach had a minor violation for failing to sound the horn properly at a crossing. In April 2006, Leach had a major offense

for a Rule 100-J violation.  He was dismissed from the service but was given a leniency reinstatement by O'Brien.  Leach had four other minor violations and one serious violation between July 2000 and November 2005.  Doc. No. 25-15, at 1-3.

As indicated, the EEOC filed suit against CSX on Gay's behalf, alleging that CSX discriminated against Gay on the basis of race in violation of Title VII of the Civil Rights Act of 1964 by not granting him a leniency reinstatement.  After the close of discovery, CSX filed a motion for summary judgment which is now ready for disposition.

## II. Summary Judgment Standard of Review

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers.   The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, . . . or is not significantly probative, . . . the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

III. <u>Analysis</u>

The EEOC presents a claim of race discrimination against CSX on behalf Edward Gay pursuant to Title VII of the Civil Rights Act of 1964. It is not disputed that there is no direct evidence of racial discrimination, such as derogatory comments or remarks about Gay's race. Accordingly, analysis of the claim proceeds under the <u>McDonnell-Douglas</u> burden shifting framework.

Under this method, a plaintiff establishes a prima facie case of race discrimination by showing: 1) he is a member of a protected class; 2) he suffered an adverse employment action; 3) he was qualified for the job lost or not gained; and 4) he was replaced by an individual outside of the protected class or treated less favorably than a similarly-situated employee outside of the protected class. <u>Talley v. Bravo Pitino Restaurant, Ltd.</u>, 61 F.3d 1241, 1246 (6th Cir. 1995).

Once the plaintiff establishes a prima facie case of race discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for its decision. <u>Manzer v. Diamond Shamrock Chem. Co.</u>, 29 F.3d 1078, 1082 (6th Cir. 1994).

If the employer meets its burden of production, the burden shifts back to the plaintiff to show that the reasons proffered by the defendant are pretextual. <u>Id.</u> However, the

burden of persuasion remains with the plaintiff at all times. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993).

The plaintiff may prove pretext in three ways: 1) by showing that the defendant's reasons had no basis in fact; 2) by showing that the reasons did not actually motivate the defendant; or, 3) by showing that the proffered reasons were not sufficient to warrant the action taken. Kline v. Tennessee Valley Auth., 128 F.3d 337, 346 (6th Cir. 1997). When the plaintiff proves pretext by the first or third methods, the fact finder may infer discrimination and the plaintiff need not produce any additional evidence of discrimination. Id. In the second situation, the factual basis for the discharge is not challenged; therefore, the plaintiff must adduce additional evidence of discrimination in order to prevail. Id. at 346-47.

In its motion for summary judgment, CSX argues that the EEOC cannot establish a prima facie case of discrimination because Gay was not replaced and there is no evidence of a similarly-situated employee outside of the protected class who was treated more favorably than Gay. CSX argues that Leach, one of the comparators offered by the EEOC, is not similarly-situated to Gay because their conduct was different. CSX also argues that different decision-makers were involved in the respective reinstatement decisions. CSX contends further that even if the

EEOC can establish a prima facie case of discrimination, it cannot meet its burden of establishing pretext.

In order to be similarly-situated, the plaintiff must show that all relevant aspects of his employment situation are nearly identical to the non-protected employee's situation. Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his treatment must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992). Keeping in mind that the burden to establish a prima facie case of discrimination is not onerous, Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 253 (1981), a reasonable juror could easily determine that Gay and Leach are similarly-situated.

First, a reasonable juror could conclude that Gay and Leach engaged in substantially similar conduct. Indeed, Leach's record is arguably worse than Gay's record. While Gay had one Rule 100-J violation, Leach actually had two Rule 100-J violations, both of which resulted in his dismissal from service. Leach, however, was granted a leniency reinstatement on both occasions. While CSX focuses on the fact that Gay had a Rule G

violation, and Leach did not, Leach had a major offense for telling an offensive joke and Gay did not. By the Court's count, Leach had three major offenses to Gay's two. While Gay had three serious offenses, and Leach only two serious offenses, it appears that Leach had more minor offenses than Gay. Both of these men's records are littered with infractions. Swafford testified that both Gay's and Leach's records were "bad" and even he could not say with any certainty whose record was worse. Swafford Dep. (Doc. No. 26-1), at 67-69. The Court, therefore, concludes that for purposes of summary judgment, Gay and Leach are similarly-situated with respect to their employment records.

CSX contends further that Gay and Leach are not similarly-situated with respect to the decision-maker in their respective cases, but this contention is clearly refuted by the record. It is not disputed in this case that only the division manager had the discretion and authority to grant leniency reinstatements and that O'Brien was the responsible division manager who denied Gay a leniency reinstatement and granted two leniency reinstatements to Leach. This is sufficient to deem Gay and Leach similarly-situated with respect to the decision-maker. See McMillan v. Castro, 405 F.3d 405, 414 (6th Cir. 2005) (comparators can be similarly-situated where they deal with the same ultimate decision maker); Barry v. Noble Metal Processing, Inc., 276 Fed. Appx. 477, 481 (6th Cir. 2008)("[T]wo employees

11

who are directly supervised by different individuals are not necessarily dissimilar if the same member of management disciplined both the plaintiff and the comparable employee.").

CSX tries to differentiate Leach and Gay with respect to the decision-maker on the basis that Swafford had input into the decision to deny Gay a leniency reinstatement whereas Swafford did not make any recommendations whether Leach should have been given leniency reinstatements.  Essentially CSX wants to make Swafford the decision-maker with respect to Gay and/or impute Swafford's non-discriminatory reasons for recommending against a leniency reinstatement for Gay to O'Brien.  This is untenable, however, at least for purposes of summary judgment.  First, as the Court has already stated, the record firmly establishes that whatever weight Swafford's recommendation may or may not have carried, only O'Brien had the authority to grant leniency reinstatements.  Therefore, O'Brien was <u>the</u> decision-maker for both Gay and Leach.

Second, while the case law of this Circuit has long been that a discrimination-influenced recommendation from an intermediate supervisor can taint an otherwise non-discriminatory decision-making process,[3] CSX's apparent

---

[3] <u>See</u>, <u>e.g.</u>, <u>Arendale v. City of Memphis</u>, 519 F.3d 587, 604 n. 13 (6th Cir. 2008)("When an adverse hiring decision is made by a supervisor who lacks impermissible bias, but that supervisor was influenced by another individual who was motivated by such bias, this Court has held that the employer may be held liable

contention that a non-discriminatory recommendation can cleanse a discrimination-tainted decision-making process lacks support. CSX cites the recent Supreme Court decision in Staub v. Proctor Hosp., 131 S. Ct. 1186 (2011), for the proposition that Swafford's participation in the decision whether to grant Gay a leniency reinstatement makes him a decision-maker in this case. Without reciting all of the details of the case, it is fairly clear to this Court that Staub is only a minor variation of the existing rule in this Circuit, cited in Arendale, supra, that an employer may be held liable for discrimination if the impermissible bias of one supervisor influenced the decision of an otherwise non-biased decision-maker.  See id. at 1194 ("We therefore hold that if a supervisor performs an act motivated by antimilitary animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA.") (emphasis in original)(internal footnote omitted).  Nothing in Staub supports the rule suggested by CSX - that an unbiased recommendation renders the entire decision-making process non-discriminatory.  Indeed, such a rule would too easily provide cover to a decision-maker prone to discriminate.

---

under a "rubber-stamp" or "cat's paw" theory of liability.").

Accordingly, the Court concludes that for purposes of summary judgment, Gay and Leach are similarly-situated. The Court, therefore, need not consider whether the other comparator proffered by the EEOC, Adams, is also similarly-situated.

Gay's alleged poor safety record and other issues identified by Swafford in his affidavit provide legitimate non-discriminatory reasons for not granting Gay a leniency reinstatement. The Court, therefore, considers whether the EEOC has adduced sufficient evidence of pretext. The Court concludes that it has.

As an initial matter, as just discussed, Gay's record and Leach's employment record are similar, and Leach's is arguably worse. O'Brien reinstated Leach twice but refused to reinstate Gay. This evidence is sufficient to show that Gay's record was an insufficient reason not to grant him a leniency reinstatement. See Manzer, 29 F.3d at 1084 ("The third showing [of pretext] is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff."). Additionally, the entirely standardless and subjective nature of the decision whether to grant leniency reinstatements provides a ready mechanism for discrimination.

14

Grano v. Department of Dev. of City of Columbus, 699 F.2d 836, 837 (6th Cir. 1983). These two factors are sufficient for a reasonable juror to conclude that CSX's reasons for not granting a leniency reinstatement to Gay are pretextual.

CSX contends that the EEOC has to refute each one of its reasons for not granting Gay a leniency reinstatement. In addition to Gay's record, these other reasons include Gay's alleged failure to fully accept responsibility for his conduct and his alleged failure to control his emotions. But the rule that the plaintiff has to rebut each one of the employer's proffered reasons to establish pretext applies only if each reason was independently sufficient to justify the decision. Smith v. Chrysler Corp., 155 F.3d 799, 809 (6th Cir. 1998). The Court is not certain this record justifies a conclusion that these additional reasons were sufficient to deny reinstating Gay on a leniency basis. More importantly, however, the additional reasons CSX contends the EEOC has to rebut to establish pretext are really only Swafford's reasons for his recommendation. There is no evidence in the record, however, that O'Brien relied on all of these reasons in deciding to deny Gay a leniency reinstatement. Indeed, the evidence in the record suggests that these other reasons played no part in O'Brien's decision and that only Gay's record was the basis for his decision. See Doc. No. 30-1, at 14 (email from O'Brien to CSX Labor Relations dated

March 27, 2009, stating: "I do not agree with reinstatement of Mr. Gay. His past record does not justify his employment with CSX."); Gay Dep. at 149-15 (testifying that O'Brien shook his disciplinary record at him and stated, "This is yours; [You] own it."). In fact, even Swafford did not know for sure what O'Brien based his decision on. Swafford Dep., Doc. No. 26-1, at 31.[4]

The bottom line in this case is that Gay's and Leach's employment histories and disciplinary records are similar. O'Brien reinstated Leach twice after Rule 100-J violations and denied Gay reinstatement after his. As much as CSX would like to impute Swafford's non-discriminatory rationale to O'Brien, there is no evidence that O'Brien relied on Swafford's reasoning in making his decision. To the contrary, Gay's record seems to

---

[4] Swafford testified here as follows:

> Q. And your recommendation was that leniency reinstatement not be granted for Mr. Gay, is that correct?
>
> A. Yes.
>
> Q. And Mr. O'Brien agreed with you, right?
>
> A. I mean, I don't know what he–I don't–
>
> Q. Did he ever question that recommendation?
>
> A. Well, we talked about it. Why, you know. He asked some questions. I can't tell you specifically, but he asked questions. I sure he made his decision based off everything he had.

be O'Brien's only stated reason for denying him reinstatement. Unfortunately, because of O'Brien's untimely death, we cannot know on what basis he distinguished Gay's record from Leach's record.  For purposes of summary judgment, however, it is sufficient that a reasonable juror could find that Gay's and Leach's records were similar and the only distinguishing characteristic between the two is their race.  Therefore, CSX is not entitled to summary judgment.

      Accordingly, CSX's motion for summary judgment is not well-taken and is **DENIED.**

      **IT IS SO ORDERED**

Date January 11, 2012             s/Sandra S. Beckwith
                                   Sandra S. Beckwith
                          Senior United States District Judge